**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**DAVID REES**                                                                                   **PLAINTIFF**

     **v.**                                        **CASE NO. 3:08-CV-00147 BSM**

**CITY OF JONESBORO;**
**MICHAEL MCQUAY, in his**
**individual capacity; and PHILLIP**
**CREGO, in his individual capacity**                                          **DEFENDANTS**

<u>**ORDER ON MOTION FOR SUMMARY JUDGMENT**</u>

Before the court is plaintiff David Rees's motion for summary judgment. Defendants

City of Jonesboro and Michael McQuay (collectively "defendants") filed a response. For the

reasons stated below, the motion is denied.

**I.  FACTUAL BACKGROUND**

Taking the facts in the light most favorable to the nonmovant, in the early morning

hours of May 8, 2008, Officer Michael McQuay of the Jonesboro Police Department  was

driving through the parking lot of the Electric Cowboy, an establishment that serves alcoholic

beverages, on routine police work when he was flagged down by an Electric Cowboy patron

due to a minor motor vehicle accident.  In connection with the investigation of the accident,

McQuay administered a field sobriety test to Mr. Jerome, the driver of the vehicle that was

deemed at fault.

Defendants submit the incident report attached to McQuay's affidavit as the record

of McQuay's observations on the night in question.  The incident report states that during the

administration of the field sobriety test, McQuay observed plaintiff David Rees leaning in

a City Cab van "where he started yelling 'shut your F***ING mouth, you can't F***ING talk to me that way!'." Ex. 1, defendants' response to plaintiff's motion for summary judgment ("defs.' resp."). The report further states:

> I then walked over to Mr. Rees and asked him to stand next to the van. Mr. Rees tried to explain what was going on, where I could smell a strong odor of intoxicants coming from her person. I stopped Mr. Rees and told him that I was getting another officer there since I was giving SFST's. Mr. Rees started to argue with someone in the van again and I told him not to look in the van again until another officer could find out what was going on. Mr. Rees leaned up against the van and then came off the van where he was swaying and another subject told him that it would be best if he just leaned up against the van. I had dispatch start another unit while I continued with my SFST's and waited on another unit. . . . Mr. Jerome was placed into custody and placed in the back of my unit for driving while intoxicated. (see car video unit 600).
>
>      As I was placing Mr. Jerome into custody Officer Bissett arrived on the scene to assist me with what was going on with Mr. Rees. I started to tell Officer Bissett what I had observed and that Mr. Rees was disorderly. Mr. Rees then started getting loud again so I went to place him into custody where he struggled slightly as I tried to put him into handcuffs. Once I had Mr. Rees in custody I placed him in Officer Bissett's vehicle to transport for me. When I got to the van again SFT. Oldham had the other subject from the van in custody for public intoxication so I took him to my vehicle and transported both subjects in my vehicle to CCDC. Once at CCDC I took Mr. Jerome into the BAC room where I observed him for 20 minutes. . . . After I gave Mr. Jerome all his paper work I asked Mr. Mays if he wanted a Breath test and he advised that he did not. Mr. Mays and Mr. Rees started to argue again on the bench at CCDC so I issued Mr. Mays citation 299849 for public intoxication . . . . The jailer then moved Mr. Mays into detox to separate him from Mr. Rees. Mr. Rees was issued citation 301116 with 05-12-08 at 1300 for his court date and when I explained the charges (public intoxication and disorderly conduct) and $450.00 bond he started to argue with me about the charges. I asked Mr. Rees if he wanted a breath test and he stated maybe but refused to go to BAC room with me. Mr. Rees was given numerous changes to take a breath test and kept refusing so he was turned over to CCDC.

*Id*.  It is undisputed that the communications between Rees and McQuay were captured on McQuay's dash camera located within the police vehicle and has been submitted for the court's review.  It is undisputed that Rees was acquitted of both charges – disorderly conduct and public intoxication – at a trial in the City of Jonesboro District Court.

On September 5, 2008, Rees filed his complaint against defendants the City of Jonesboro (the "City") and McQuay, but subsequently amended the complaint to add Phillip Crego, City Attorney for Jonesboro, as a defendant.  Rees brings his amended complaint pursuant to 42 U.S.C. § 1983.  He alleges that McQuay subjected him to an arrest without probable cause and without due process in violation of the Fourth and Fourteenth Amendments.  He also alleges that the supervisory and policymaking officials of the City know or have reason to know of the pervasive unconstitutional actions of the City's police officers, including subjecting its citizens to arrests and detentions without probable cause, but have failed to train, supervise, and discipline its police officers, giving it the status of a policy or custom of the City.  Additionally, Rees alleges that the decision of Crego to charge him, knowing that there was no probable cause to believe that Rees had committed the offenses for which he was arrested, violated his rights under the Fourth, Fifth, and Fourteenth Amendments.  Further, Rees alleges that when he contacted Crego to explain why dismissal of the charges was appropriate, including the fact that two eyewitnesses had provided affidavits that proved he was innocent, Crego accused Rees of harassing him and threatened to have him arrested if Rees ever contacted him again, in violation of his rights to liberty, free

3

speech, and free association guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments. Finally, Rees alleges that he received a continuance of his trial date due to a long-established medical appointment in Little Rock, but when Crego became aware that Rees had returned to Jonesboro in the afternoon on the originally scheduled trial date, he sent notice to Rees's law office that he intended to arrest him for misleading the court. Rees alleges that he felt compelled to leave the county and stay in Memphis until the matter was properly resolved, and that Crego's improper and unwarranted threats violated his right to liberty and to be free from unlawful arrest under the Fourth, Fifth, and Fourteenth Amendments.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not

required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III. DISCUSSION

Section 1983 provides a cause of action against government officials who deprive persons of "rights, privileges, or immunities secured by the Constitution." *Nelson*, 533 F.3d at 961 (citing 42 U.S.C. § 1983). Qualified immunity is a question of law for the court. *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007). "Whether an official is entitled to qualified immunity depends upon the objective legal reasonableness of the official's actions assessed in light of the legal rules that were clearly established at the time of the actions in question." *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal quotation marks omitted). Qualified immunity shields defendants "[f]rom liability for civil damages insofar as their conduct does not violate clearly established

5

statutory or constitutional rights of which a reasonable person would have known." *Marley v. Crawford County, Arkansas*, 383 F. Supp. 2d 1129, 1131-32 (W.D. Ark. 2005) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The Fourth Amendment right of citizens not to be arrested without probable cause is clearly established." *Hill v. Scott*, 349 F.3d 1068, 1072 (8th Cir. 2003). The court notes that the Supreme Court revoked the subjective component of qualified immunity in *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See Robinette v. Jones*, 476 F.3d 585, 592 n.7 (8th Cir. 2007).

Probable cause existed if at the moment of arrest, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing Rees committed the charged crime. *Womack v. City of Bellefontaine Neighbors*, 193 F.3d 1028, 1031 (8th Cir. 1999). Pursuant to Arkansas Rule of Criminal Procedure 4.1, "[a] law enforcement officer may arrest a person without a warrant if . . . the officer has reasonable cause to believe that such person has committed any violation of law in the officer's presence . . . ." Ark. R. Crim. P. 4.1. "Upon making an arrest, a law enforcement officer shall . . . as promptly as is reasonable under the circumstances, inform the arrested person of the cause of the arrest." Ark. R. Crim. P. 4.4(c). At the scene, McQuay informed Rees that he was being arrested for disorderly conduct, but amended the charge to include public intoxication at CCDC.

Arkansas Code Annotated § 5-71-207 provides:

6

(a) A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she:

> (1) Engages in fighting or in violent, threatening, or tumultuous behavior;

> (2) Makes unreasonable or excessive noise;

> (3) In a public place, uses abusive or obscene language, or makes an obscene gesture, in a manner likely to provoke a violent or disorderly response;
> . . .

(b) Disorderly conduct is a Class C misdemeanor.

Arkansas Code Annotated § 5-71-212 provides:

(a) A person commits the offense of public intoxication if he or she appears in a public place manifestly under the influence of alcohol or a controlled substance to the degree and under circumstances that:

> (1) The person is likely to endanger himself or herself or another person or property; or

> (2) The person unreasonably annoys a person in his or her vicinity.

(b) Public intoxication is a Class C misdemeanor.

Rees asserts that summary judgment is appropriate because the videotaped evidence of the events which led to his arrest provides conclusive proof that he was arrested for public intoxication and disorderly conduct without probable cause and that there was no basis for the prosecution by Crego. Rees states that the state court judge dismissed the public intoxication charge on his directed verdict motion and dismissed the disorderly conduct charge because the government failed to meet its burden of proof after reviewing the

videotape.  Rees also provides the affidavits of two eyewitnesses to his arrest.  Ellen Hunt, the cab driver, and her daughter, a passenger in the cab, state in their affidavits that a man in the cab threatened to "cook" or "get rid of" Rees, but that Rees was not "hollering, cursing, or acting belligerent in anyway."  Exs. B-1 and B-2, plaintiff's motion for summary judgment ("pltf.'s motion").  They state that Ellen Hunt asked the other police officer to remove the man threatening Rees from her cab.  *Id.*  Rees further asserts that McQuay is not entitled to qualified immunity because it is "so obvious that Defendant McQuay did not act reasonably."

In response, defendants assert that, as set forth in McQuay's affidavit, it is clear that McQuay believed he had probable cause to arrest Rees considering the language Rees was using and the actions he was taking, as well as the fact that "he appeared to be for all intents and purposes intoxicated."  Defendants state that Rees simply disagrees with McQuay's assessment that Rees was publically intoxicated and being disorderly.  Defendants also assert that McQuay is entitled to qualified immunity.  Defendants state that McQuay is entitled to believe that when faced with a verbal altercation from an intoxicated citizen who is interfering with the officer's arrest of a third party, the individual causing the disturbance is subject to arrest for disorderly conduct and public intoxication.  Defendants also state that it was not clearly established that a police officer violates a person's constitutional rights in subjecting that person to arrest when there is a verbal altercation between the police officer and a citizen.

The court has reviewed the videotape of the incident, which clearly shows that Rees was standing outside the cab, and someone inside the cab was screaming and cursing. The video also shows that Rees appeared to remain calm during the entire time that the videotape was rolling and did not appear to become hostile or belligerent. The court notes, however, that the vast majority of the conversation between Rees and the occupants of the cab is not clearly audible. Also, it is not clear how much of the conversation could be heard by McQuay. The question, however, is not whether Rees was actually cursing and screaming, but is whether, at the moment of arrest, the facts and circumstances within McQuay's knowledge, and of which he had reasonably trustworthy information, were sufficient to warrant a prudent person in believing Rees committed the charged crime. Similarly, the qualified immunity question is "whether a reasonably competent officer could believe there was probable cause to arrest" Rees. *Martin v. Russell*, 563 F.3d 683, 686 (8th Cir. 2009). On this record, these are questions for the jury. Rees's motion for summary judgment is therefore denied as to McQuay.

As to the claims against defendant Crego, Rees asserts that Crego was aware of the lack of probable cause when he chose to charge Rees, as he had access to the videotape. Rees submits his affidavit detailing the threats made by Crego. Rees contends that Crego's improper conduct cannot fall within any claim of prosecutorial immunity because it was extrajudicial and had no relation to Crego's advocacy function on behalf of the state.

In response, defendants state that Crego has not been served by Rees, and the suit

9

against him should be dismissed for failure to obtain service within the time set forth under

Federal Rule of Civil Procedure 4(m).  The docket does not contain any indication that Crego

has been served.  Rees is therefore directed to file a statement on or before August 20, 2009,

showing cause why Crego should not be dismissed.  Failure to comply with the court's order

will result in the dismissal of defendant Crego without prejudice.

Rees does not address his claims against the City, and thus, those claims are not

properly before the court.

Accordingly, plaintiff's motion for summary judgment (Doc. No. 9) is denied.

Plaintiff David Rees is directed to file a statement with the court to show cause why

defendant Phillip Crego should not be dismissed from this lawsuit on or before August 20,

2009.  Failure to comply with the court's order will result in the dismissal of defendant Crego

without prejudice.

IT IS SO ORDERED THIS 22nd day of July, 2009.


_____
UNITED STATES DISTRICT JUDGE